**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff/Respondent, ) | |
| ) | Case No. 10-40118-JAR |
| v. ) | Case No. 13-4078-JAR |
| ) | |
| TREMAINE MONDALE BEADLES, ) | |
| ) | |
| Defendant/Petitioner. ) | |
| ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Petitioner Tremaine Beadle's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody (Docs. 96, 97). In his motion, Petitioner seeks relief on grounds that he was denied effective assistance of counsel. The Government has responded (Doc. 103), and Petitioner has replied (Docs. 104, 105). After a careful review of the record and the arguments presented, the Court denies Petitioner's motion without further evidentiary hearing.

**I.      Factual and Procedural Background**

On December 7, 2010, Petitioner was charged with one count of bank robbery, in violation of 18 U.S.C. § 2113.[1] Petitioner was represented by numerous court-appointed attorneys over the course of these proceedings. Jason Belveal was Petitioner's third attorney; he represented him at trial and filed several post-trial motions. On October 11, 2011, Belveal was appointed Jefferson County Attorney,[2] and withdrew prior to sentencing. Joseph Huerter was

---

[1]Doc. 1.

[2]Doc. 103 at 12 n.3.

appointed substitute counsel and represented Petitioner at sentencing and on his direct appeal.

On October 4 and 5, 2012, a jury tried Petitioner on the bank robbery charge, where the parties presented the following facts:

During October 2010, Petitioner was residing at the Grossman Center in Leavenworth, Kansas.[3] The Grossman Center is a federal reentry center where the Bureau of Prisons releases inmates to facilitate their reentry back into the community.[4] On October 19, 2010, Petitioner signed out of the Grossman Center at 6:48 a.m. and returned at 5:00 p.m.[5]

On October 19, 2010, at 2:12 p.m., Topeka, Kansas police officers were dispatched to the Kaw Valley Bank located at 1944 NW Topeka Boulevard.[6] Upon arrival the officers made contact with Kayla Augustine, a teller with a station close to the public entrance.[7] Augustine reported the bank had been robbed by two African-American males.[8] One of the men was wearing a Halloween ghost mask, and the other was wearing a white ball cap over panty hose that he had pulled over his face.[9]

Augustine reported that when the two men entered the bank, the man with the Halloween mask jumped the two gates that separated the teller and the public areas of the bank.[10] Once

---

[3] Docs. 87, 88, Trial Tr. at 157.

[4] *Id*. at 156.

[5] *Id*. at 94–95.

[6] *Id*. at 32–34.

[7] *Id*. at 35, 77.

[8] *Id*. at 36.

[9] *Id*. at 36, 80–81.

[10] *Id*. at 77–80.

2

behind the tellers' counter, he demanded money from all the tellers and took money from their drawers.[11] He yelled at the tellers to open their drawers and threatened to shoot them.[12] While this was going on, the other man stood in the bank lobby and watched.[13] An audit of the bank indicated a loss of $12,805.00.[14]

On November 12, 2010, Scott Gentine, a Special Agent with the Federal Bureau of Investigation, received an anonymous tip from a caller who reported that she had heard from an individual incarcerated at the Grossman Center that Petitioner had committed a bank robbery on October 19 in Topeka.[15] Gentine followed up on the tip, and interviewed Petitioner at the Corrections Corporation of America ("CCA") facility in Leavenworth, Kansas, on December 1, 2010,[16] where he was held after walking away from the Grossman Center on October 26, 2010.[17]

Before asking Petitioner any questions, Agent Gentine verbally advised him of his *Miranda* rights and showed him a form advising him of his rights, which he read to Petitioner.[18] Petitioner signed the form, acknowledging his rights, waiving his rights, and agreeing to speak with Agent Gentine.[19] The Court admitted the document bearing Petitioner's waiver at the jury

---

[11]*Id*. at 78–79.

[12]*Id*. at 78.

[13]*Id*. at 80.

[14]*Id*. at 55.

[15]*Id*. at 111.

[16]*Id*. at 112; Gov't Ex. 3.

[17]Trial Tr. at 112.

[18]*Id*. at 113, 115–16; Gov't Ex. 3.

[19]*Id*. at 113; Gov't Ex. 3.

3

trial as Government Exhibit 3.[20]

During the interview, Agent Gentine asked Petitioner if he had been involved with the bank robbery in question.[21] Petitioner told Agent Gentine that he was involved.[22] He explained that while at the Grossman Center, he began receiving threats to himself and family members from other residents, in regards to his prior cooperation with law enforcement in another case involving a bank robbery with Randall Thomas.[23] Petitioner stated a resident named "Solo" blackmailed him into assisting him with the Kaw Valley Bank robbery, and threatened to harm Petitioner's wife if he did not help him commit the bank robbery.[24]

Petitioner told Agent Gentine that he arranged to leave the Grossman Center to go job-seeking on October 19, 2010.[25] He went to Kansas City, where "Solo" picked him up at the intersection of Tenth and Main Street.[26] They drove to Topeka, where they scouted potential banks to rob.[27] When they decided on Kaw Valley Bank, they pulled into the parking lot and put on masks provided by Solo.[28] Petitioner reported that after they entered the bank, he stayed at

---

[20]Trial Tr. at 113–15.

[21]*Id.* at 116.

[22]*Id.*

[23]*Id.* at 127, 137.

[24]*Id.* at 117.

[25]*Id.*

[26]*Id.*

[27]*Id.* at 117–18.

[28]*Id.* at 118.

4

the door while Solo approached the tellers and took the money.[29] He stated that soon after the robbery, they drove back to Leavenworth and split the proceeds; Solo gave Petitioner $4000.[30] During the interview, Petitioner viewed a photo taken from a video surveillance of the robbery and identified himself in the picture as the man wearing the white ball cap, and the other individual in the photo as Solo.[31]

Agent Gentine testified that Petitioner had committed bank robberies of Topeka banks on three prior occasions: 1) he helped Randall Thomas rob the Kaw Valley State Bank on November 13, 2006; 2) he robbed another Kaw Valley State Bank on November 24, 2006; and 3) he robbed the Capital City Bank on November 28, 2006.[32]

Petitioner testified in his defense. Specifically, he testified that during his stay at the Grossman Center, he received threats from other residents because he had cooperated with law enforcement in the past; that other residents, including Solo, threatened to kill him if he did not commit this bank robbery to obtain money to buy drugs for the other residents in the Grossman Center; that on October 18, 2010, Solo picked him up at Tenth and Main in Kansas City; that Petitioner suggested they rob the Kaw Valley Bank in Topeka; that they robbed the bank at 2:11 p.m., he got his $4000, then he returned to the Grossman Center and hid his money in his shoe; and that he walked away from the Grossman Center on October 26.[33]

Petitioner was convicted of one count of bank robbery by force, violence or intimidation

---

[29]*Id.*

[30]*Id.*

[31]*Id.* at 123–24.

[32]*Id.* at 137–39.

[33]*Id.* at 176–210.

5

in violation of 18 U.S.C. §§ 2 and 2113(a).[34] On May 29, 2012, this Court sentenced Petitioner to a term of 210 months' custody.[35] Petitioner filed a direct appeal to the United States Court of Appeals for the Tenth Circuit, which affirmed.[36] The United States Supreme Court subsequently denied his petitioner for writ of certiorari.[37] Petitioner filed this timely § 2255 Motion on June 3, 2013.[38]

## II.    Legal Standards

### A.    General § 2255 Standards

Under § 2255(a):

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

According to Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts:

> The judge who receives the motion must promptly examine it. If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion. . . .

---

[34] Doc. 59.

[35] Doc. 75.

[36] *United States v. Beadles*, 508 F. App'x 807 (10th Cir. 2013).

[37] Doc. 95.

[38] *See* 28 U.S.C. § 2255(f)(1) ("A 1-year period of limitation shall apply to a motion under this section. The limitation shall run from . . . the date on which the judgment of conviction becomes final.").

An evidentiary hearing must be held on a § 2255 motion "unless the motion and files and records of the case conclusively show that the prisoner is entitled to no relief."[39] Petitioner must allege facts which, if proven, would warrant relief from his conviction or sentence.[40] An evidentiary hearing is not necessary where the factual allegations in a § 2255 motion are contradicted by the record, inherently incredible, or when they are conclusions rather than statements of fact.[41]

A district court may grant relief under § 2255 if it determines "that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack."[42] "Review under § 2255 is not an alternative to appellate review for claims that could have been presented on direct appeal but were not."[43] A movant may overcome this procedural bar by showing either of "two well recognized exceptions."[44] First, the movant must show good cause for not raising the issue earlier and actual prejudice to the movant's defense if the issue is not considered.[45] Cause may "be established by showing that counsel rendered constitutionally

---

[39] 28 U.S.C. § 2255(b).

[40] *See Hatch v. Oklahoma*, 58 F.3d 1447, 1471 (10th Cir. 1995), *overruled in part on other grounds by Daniels v. United States*, 254 F.3d 1180, 1188 n.1 (10th Cir. 2001) (en banc).

[41] *Arredondo v. United States,* 178 F.3d 778, 782 (6th Cir. 1999) (quoting *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995)); *see also Hatch*, 58 F.3d at 1471 ("the allegations must be specific and particularized, not general or conclusory"); *United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) (rejecting ineffective assistance of counsel claims which are merely conclusory in nature and without supporting factual averments).

[42] 28 U.S.C. § 2255.

[43] *United States v. Magleby,* 420 F.3d 1136, 1139 (10th Cir. 2005), *cert. denied,* 547 U.S. 1097 (2006).

[44] *United States v. Cervini,* 379 F.3d 987, 990 (10th Cir. 2004), *cert. denied,* 544 U.S. 904 (2005).

[45] *Id.*

ineffective assistance."[46] Second, the "failure to consider the federal claims will result in a fundamental miscarriage of justice."[47]

Finally, Petitioner appears *pro se*. Therefore, his pleadings are to be construed liberally and not to the standard applied to an attorney's pleadings.[48] If a petitioner's motion can be reasonably read to state a valid claim on which he could prevail, the court should do so despite a failure to cite proper legal authority or follow normal pleading requirements.[49] However, it is not "the proper function of the district court to assume the role of advocate for the *pro se* litigant."[50] For that reason, the court shall not supply additional factual allegations to round out a petitioner's claims or construct a legal theory on his behalf.[51]

### B. Ineffective Assistance of Counsel

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."[52] A successful claim of ineffective assistance of counsel must meet the two-pronged test set forth in *Strickland v. Washington*.[53] First, a defendant must show that his counsel's performance was deficient in that

---

[46] *United States v. Wiseman,* 297 F.3d 975, 979 (10th Cir. 2002) (citations omitted).

[47] *Cervini,* 379 F.3d at 990 (quoting *Coleman v. Thompson,* 501 U.S. 722, 750 (1991)); *see Bousley v. United States,* 523 U.S. 614, 621–22 (1998) (holding that a showing of actual innocence meets the fundamental miscarriage of justice prong).

[48] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[49] *Id.*

[50] *Id.*

[51] *See Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997).

[52] U.S. Const. amend. VI; *Kansas v. Ventris*, 556 U.S. 586 (2009).

[53] 466 U.S. 668 (1984).

it "fell below an objective standard of reasonableness."⁵⁴ To meet this first prong, a defendant must demonstrate that the omissions of his counsel fell "outside the wide range of professionally competent assistance."⁵⁵ This standard is "highly demanding."⁵⁶ Strategic or tactical decisions on the part of counsel are presumed correct, unless they were "completely unreasonable, not merely wrong, so that [they] bear no relationship to a possible defense strategy."⁵⁷ In all events, judicial scrutiny of the adequacy of attorney performance must be strongly deferential: "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."⁵⁸ Moreover, the reasonableness of the challenged conduct must be evaluated from counsel's perspective at the time of the alleged error; "every effort should be made to 'eliminate the distorting effects of hindsight.'"⁵⁹

Second, a defendant must also show that his counsel's deficient performance actually prejudiced his defense.⁶⁰ To prevail on this prong, a defendant "must show there is a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different."⁶¹ A "reasonable probability" is a "probability sufficient to undermine

---

⁵⁴*Id.* at 688.

⁵⁵*Id.* at 690.

⁵⁶*Kimmelman v. Morrison*, 477 U.S. 365, 382 (1986).

⁵⁷*Fox v. Ward*, 200 F.3d 1286, 1296 (10th Cir. 2000) (quotation and citations omitted).

⁵⁸*Strickland*, 466 U.S. at 689.

⁵⁹*Edens v. Hannigan*, 87 F.3d 1109, 1114 (10th Cir. 1996) (quoting *Strickland*, 466 U.S. at 689).

⁶⁰*Strickland*, 466 U.S. at 687.

⁶¹*Id.* at 694.

9

confidence in the outcome."[62] This, in turn, requires the court to focus on "the question whether counsel's deficient performance render[ed] the result of the trial unreliable or the proceeding fundamentally unfair."[63]

A defendant must demonstrate both *Strickland* prongs to establish a claim of ineffective assistance of counsel, and a failure to prove either one is dispositive.[64] "The performance component need not be addressed first. 'If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed.'"[65]

**III.  Discussion**

Petitioner requests relief under § 2255 on four grounds of ineffective assistance of counsel: 1) that trial counsel and subsequent counsel both had conflicts of interest they did not reveal to him; 2) that counsel ineffectively failed to timely file motions to suppress, to change the venue of his trial, and for a new trial; and 3) that each of his many appointed attorneys ineffectively represented him because they did not challenge Agent Gentine's "seizure" of his allegedly involuntary confession, and because he was unable to cross-examine the anonymous person who called Agent Gentine and told him she had heard from someone at the Grossman Center that Petitioner had committed the robbery. The Court addresses each in turn.

**A.  Conflicts of Interest**

---

[62]*Id.*

[63]*Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).

[64]*Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

[65]*Id.* (quoting *Strickland*, 466 U.S. at 697); *see also Romano v. Gibson*, 239 F.3d 1156, 1181 (10th Cir. 2001) ("This court can affirm the denial of habeas relief on whichever *Strickland* prong is the easier to resolve.").

Petitioner argues that the Court should not have appointed Mr. Belveal to represent him "with he and the court having knowledge of him running in a prosecution election"; that Belveal failed to advise him that he was running for such an election; that Belveal was elected after Petitioner's trial; and "Mr. Huerter shouldn't have been allowed to fill-in" for Belveal because of his relationship with Belveal and because he lacked experience in federal court.

When a conflict of interest is at issue in an ineffective assistance inquiry, *Strickland's* prejudice requirement will be presumed if Petitioner shows that an actual conflict adversely affected his representation.[66] "Petitioner has the burden to show that the relationship resulted in a division of loyalties which adversely affected counsel's performance."[67]

Petitioner's claim fails under both prongs of *Strickland*. First, he fails to point to any facts of record or evidence that an actual conflict caused him prejudice with respect to his trial or sentencing or otherwise. That Mr. Belveal was appointed Jefferson County Attorney after Petitioner's trial concluded and his associate, Mr. Huerter, was appointed substitute counsel, does not in and of itself establish a conflict. A prosecutor or law partner or associate of such public servants is not precluded, on the basis on conflict of interest, from representing defendants in criminal cases in other courts.[68] Petitioner's conclusory assertions that counsel "did not have his best interest at heart," and thus there was a conflict are not specific and particularized factual allegations, which, if proved, would entitle him to relief, nor do they constitute a sufficient basis

---

[66] *U.S. v. Solomon*, 42 F. App'x. 88, 90 (10th Cir. 2002).

[67] *Gleason v. McKune*, No. 11-3110-SAC, 2010 WL 2952242, at *19 (D. Kan. July 19, 2012).

[68] *See Kansas v. Gleason*, 88 P.3d 218, 236–38 (Kan. 2004) (collecting cases).

upon which to find that his counsel performed ineffectively.[69] Because Petitioner cannot make this showing, he necessarily fails to establish that counsels' alleged deficient performance prejudiced him, and his claim is denied.

### B. Failure to File Motions

Petitioner claims that Belveal and Huerter ineffectively failed to file a motion to suppress his involuntary confession, a motion for a change of venue, and a motion for new trial. This claim fails because Petitioner does not support his allegations by pointing to any facts of record or legal bases that his counsel could have used to successfully bring any of these motions.[70]

First, a waiver of *Miranda* rights must be made voluntarily, knowingly, and intelligently.[71] In determining whether rights were voluntarily waived, the court considers: the suspect's age, intelligence and education; whether the suspect was informed of his or her rights; the length and nature of the suspect's detention and interrogation; and the use of threat of physical force against the suspect.[72] The same factors are assessed in determining whether a confession was voluntarily given.[73] While Petitioner contends that his confession to Agent

---

[69]*United States v. Weeks*, 653 F.3d 1188, 1200 (10th Cir. 2011) (considering whether defendant "has articulated facts which, if proven, would entitle him to relief" for purposes of determining whether district court erred in denying his § 2255 petition); *Hatch v. Oklahoma*, 58 F.3d 1447, 1457 (10th Cir. 1995), *overruled in part on other grounds by Daniels v. United States*, 254 F.3d 1180, 1188 n.1 (10th Cir. 2001) (en banc) ("[T]he petitioner bears the burden of alleging facts which, if proved, would entitle him to relief. Moreover, his allegations must be specific and particularized; conclusory allegations will not suffice to warrant a hearing." (internal alterations, quotation marks, and citations omitted)).

[70]*Weeks*, 653 F.3d at 1200; *Hatch*, 58 F.3d at 1457.

[71]*United States v. Smith*, 606 F.3d 1270, 1276 (10th Cir. 2010) (citing *Smith v. Mullin*, 379 F.3d 919, 932 (10th Cir. 2004)).

[72]*Id*. (citing *United States v. Minjares-Alvarez*, 264 F.3d 980, 985 (10th Cir. 2001)).

[73]*Id*.

Gentine was "involuntary," he does not explain why it was involuntary, nor does he provide any facts or argument that his counsel could have used to argue that it was involuntary, or cite any applicable law under which his counsel could have obtained suppression of the confession. Instead, Petitioner merely asserts that such a motion should have been "automatic," and that he had not been placed under arrest when he made his *Miranda* waiver.

At trial, the Government presented Exhibit 3, showing that Agent Gentine advised Petitioner of his *Miranda* rights before he questioned him, that Petitioner acknowledged his rights, and that Petitioner agreed to speak with the agent, as evidenced by Petitioner's signature on the Advice of Rights form.[74] Given this evidence, counsels' decision not to seek suppression of the confession was neither deficient nor outside the wide range of professionally competent assistance. Indeed, Petitioner took the stand in his defense and gave the same testimony he made in his confession to Agent Gentine, admitting to participating in the robbery, but asserted that his accomplice, Solo, coerced him into committing the robbery by making threats against him and his loved ones. Thus, Petitioner cannot show that he was prejudiced by counsels' failure to file such a motion, and his claim is denied.

Nor was counsels' decision not to file a motion to change the venue of the trial deficient or outside the wide range of professionally competent assistance. The Court notes that Petitioner fails to mention that his first counsel in this case, Assistant Federal Public Defender Marilyn Trubey, filed a Motion to Change Venue, which was subsequently withdrawn at Petitioner's request.[75] Petitioner now claims that he could have prevailed on such a motion because "he had

---

[74]Gov't Ex. 3.

[75]Doc. 17.

previously been convicted of similar offenses in this same court, by the same prosecutor and Federal Agent in this case." But this is not the standard for a change of venue. The Sixth Amendment ensures that "[i]n all criminal prosecutions, the accused shall enjoy the right to a . . . trial[]by an impartial jury of the State and district wherein the crime shall have been committed."[76] Due process may require a change of venue stemming from a showing that 1) there is pretrial publicity so pervasive and prejudicial that a court could not expect to find an unbiased jury pool, or 2) a set of unusual circumstances directly related to the particular case that make defendant's trial "fundamentally unfair."[77] The Court agrees with the Government that, absent a showing of fundamental unfairness, a defendant who commits successive crimes does not have a right to chose his prosecutor, his FBI Agent, or the venue where he will be tried. Because there is no basis for such a motion, Petitioner was not prejudiced by counsels' failure to renew it, and this claim is denied.

Finally, Petitioner does not show that counsel performed deficiently or outside the wide range of professionally competent assistance by failing to file a motion for new trial. Fed. R. Crim. P. 33 states that the court may grant a motion for a new trial "if the interest of justice so requires." A motion for new trial under Rule 33 is not regarded with favor and is granted with great caution.[78] The decision whether to grant a motion for new trial is committed to the sound

---

[76]U.S. Const. amend. VI.

[77]*See Gardner v. Galetka*, 568 F.3d 862, 888 (10th Cir. 2009); *Brecheen v. Reynolds*, 41 F.3d 1343, 1351 (10th Cir. 1994).

[78]*United States v. Herrera,* 481 F.3d 1266, 1269–70 (10th Cir. 2007) (citing *United States v. Trujillo,* 136 F.3d 1388, 1394 (10th Cir.1998)).

discretion of the trial court.[79] Petitioner does not explain the evidentiary or legal bases counsel could have used to file such a motion, nor does he offer this Court any basis upon which it could have granted such a motion. To the extent Petitioner claims that such a motion could have been based on his involuntary confession or improper venue, the Court has already disposed of those claims as lacking merit. Accordingly, this claim fails because Petitioner does not articulate specific and particularized factual allegations, which, if proven, would entitle him to relief, nor does he provide the Court with any basis to find counsel performed ineffectively. For these reasons, he also fails to demonstrate that he was prejudiced, and this claim is denied.

### C. Fourth and Sixth Amendment Violations

Petitioner claims that all six of his counsel failed to challenge the fact that Agent Gentine "illegally seized the petitioner's involuntary confessions to obtain a conviction," and this "illegal seizure was in direct denial of petitioner's 4th Amendments [sic] rights because it was done without a well established ground for probable cause or a search/arre[s]t warrant in this matter." Petitioner contends that Agent Gentine violated his Fourth Amendment rights when he went on private CCA property and seized Petitioner's person along with his handwritten involuntary confession. Although less than clear, it appears that Petitioner argues that because Agent Gentine fabricated evidence of the anonymous tip, his post-*Miranda* confession is tainted and was obtained in violation of his Fourth Amendment rights.[80]

---

[79]*United States v. Custodio*, 141 F.3d 965, 966 (10th Cir. 1998).

[80]Petitioner also contends that he requested counsel to file a "James Law" motion. The Court construes this claim to refer to a "James hearing," which is held to determine the admissibility of co-conspirator statements, and finds that it is not relevant to this case. *See United States v. Townley*, 472 F.3d 1267, 1273 (10th Cir. 2007).

The record shows that Petitioner was questioned at CCA, where he had been sent as a result walking away from the Grossman Center in late October.[81] Thus, Petitioner was already in federal custody at the time of questioning. There is no evidence in the record, however, to support Petitioner's conclusory accusation that Agent Gentine fabricated evidence about the anonymous tip. Agent Gentine testified at trial that when he followed up on the tip, it was all the evidence he had in solving this particular Kaw Valley Bank robbery, and that law enforcement had gone several weeks without a suspect.[82] Even assuming that there was a Fourth Amendment violation, however, any resulting taint was dissipated by the intervening circumstance that Petitioner was given and waived his *Miranda* rights.[83] Petitioner acknowledged in the Advice of Rights form that he had the right to remain silent, that he was not required to answer any questions without a lawyer present and that he could stop questioning at any time.[84] Nevertheless, he proceeded to confess the bank robbery to Gentine, asserting he was coerced into participating by Solo. Accordingly, counsel was not deficient for failing to raise this issue.

Petitioner also claims that he was unable to cross-examine his accuser in violation of the Sixth Amendment because counsel failed to subpoena the anonymous caller. Petitioner cannot claim that counsel was inefficient for failing to subpoena an anonymous tipster. Moreover, even if counsel could have discovered the tipster's name, Petitioner cannot show that such failure prejudiced his case. The Court agrees with the Government that the trial evidence against

---

[81]Trial Tr. at 143.

[82]Trial Tr. at 112.

[83]*United States v. Torres-Castro*, 470 F.3d 992, 1001 (10th Cir. 2006).

[84]Gov't Ex. 3.

16

Petitioner, including his own testimony, was overwhelming. No probability exists that, but for the caller's failure to testify, the result of the trial would have been different.

Likewise, Petitioner's claim that counsel ineffectively failed to raise a *Brady* violation is without merit. To establish a violation of *Brady*, a defendant must demonstrate (1) the prosecution suppressed evidence, (2) the evidence was favorable to defendant, and (3) the evidence was material.[85] Petitioner offers purely speculative and conclusory allegations that the Government suppressed phone records or a recording of the anonymous tip and that the caller "more than likely" informed Agent Gentine that Petitioner had received death threats at the Grossman Center. There is no evidence that such records existed, and Plaintiff's latter argument suggests that he knew the tipster's identity, undermining his claim that Agent Gentine fabricated evidence. Failure to raise this meritless issue fails under both *Strickland* prongs, and Petitioner's claim is denied.

## IV.  Certificate of Appealability

Rule 11 of the Rules Governing § 2255 Proceedings requires the Court to grant or deny a certificate of appealability ("COA") when making a ruling adverse to the petitioner. "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."[86] A petitioner may satisfy his burden only if "reasonable jurists would find the district court's assessment of the constitutional claims debatable or

---

[85]*Brady v. Maryland*, 373 U.S. 83, 87 (1963).

[86]28 U.S.C. § 2253(c)(2). The denial of a § 2255 motion is not appealable unless a circuit justice or a circuit or district judge issues a certificate of appealability. *See* Fed. R. App. P. 22(b)(1); 28 U.S.C. § 2253(c)(1).

wrong."[87] A petitioner is not required to demonstrate that his appeal will succeed to be entitled to a COA. He must, however, "prove something more than the absence of frivolity or the existence of mere good faith."[88] "This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims. In fact, the statute forbids it."[89] For the reasons detailed in this Memorandum and Order, Petitioner has not made a substantial showing of the denial of a constitutional right, and the Court denies a COA as to its ruling dismissing his § 2255 motion without a hearing.

**IT IS THEREFORE ORDERED BY THE COURT** that Petitioner Tremaine Mondale Beadles' Motion Under § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Doc. 96) is DENIED without a hearing; Petitioner is also denied a COA.

**IT IS SO ORDERED.**

Dated: May 27, 2014

                                       S/ Julie A. Robinson
                                       JULIE A. ROBINSON
                                       UNITED STATES DISTRICT JUDGE

---

[87]*Saiz v. Ortiz*, 393 F.3d 1166, 1171 n.3 (10th Cir. 2004) (quoting *Tennard v. Dretke*, 524 U.S. 274, 282 (2004)).

[88]*Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003).

[89]*Id.* at 336; *see also United States v. Silva*, 430 F.3d 1096, 1100 (10th Cir. 2005).