# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| **Plaintiff**, | ) |
| | ) Case No. 10-40118-JAR |
| v. | ) |
| | ) |
| **TREMAINE MONDALE BEADLES,** | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant Tremaine Beadle's *pro se* Motion for New Trial Based on Newly Discovered Evidence of Perjury Pursuant to Fed. R. Crim. P. 33(a)(b)(1) (Doc. 107). After a careful review of the record and the arguments presented, the Court **denies** Defendant's motion.

## I.     Factual and Procedural Background

On December 7, 2010, Defendant was charged with one count of bank robbery, in violation of 18 U.S.C. § 2113.[1] On October 4 and 5, 2012, Defendant faced trial on the bank robbery charge, where the parties presented the facts below.

During October 2010, Defendant was residing at the Grossman Center in Leavenworth, Kansas.[2] The Grossman Center is a federal reentry center where the Bureau of Prisons releases inmates to facilitate their reentry back into the community.[3] On October 19, 2010, Defendant

---

[1] Doc. 1.

[2] Docs. 87, 88, Trial Tr. at 157.

[3] *Id*. at 156.

signed out of the Grossman Center at 6:48 a.m. and returned at 5:00 p.m.[4]

On October 19, 2010, at 2:12 p.m., Topeka, Kansas police officers were dispatched to the Kaw Valley Bank located at 1944 NW Topeka Boulevard.[5] Upon arrival the officers made contact with Kayla Augustine, a teller with a station close to the public entrance.[6] Augustine reported the bank had been robbed by two African-American males.[7] One of the men was wearing a Halloween ghost mask, and the other was wearing a white ball cap over panty hose that he had pulled over his face.[8]

Augustine reported that when the two men entered the bank, the man with the Halloween mask jumped the two gates that separated the teller and the public areas of the bank.[9] Once behind the tellers' counter, he demanded money from all the tellers and took money from their drawers.[10] He yelled at the tellers to open their drawers and threatened to shoot them.[11] While this was going on, the other man stood in the bank lobby and watched.[12] An audit of the bank indicated a loss of $12,805.00.[13]

---

[4]*Id*. at 94–95.

[5]*Id*. at 32–34.

[6]*Id*. at 35, 77.

[7]*Id*. at 36.

[8]*Id*. at 36, 80–81.

[9]*Id*. at 77–80.

[10]*Id*. at 78–79.

[11]*Id*. at 78.

[12]*Id*. at 80.

[13]*Id*. at 55.

2

On November 12, 2010, Scott Gentine, a Special Agent with the Federal Bureau of Investigation, received an anonymous tip from a caller who reported that she had heard from an individual incarcerated at the Grossman Center that Defendant had committed a bank robbery on October 19 in Topeka.[14] Gentine followed up on the tip, and interviewed Defendant at the Corrections Corporation of America ("CCA") facility in Leavenworth, Kansas, on December 1, 2010,[15] where he was held after walking away from the Grossman Center on October 26, 2010.[16]

Before asking Defendant any questions, Agent Gentine verbally advised him of his *Miranda* rights and showed him a form advising him of his rights, which he read to Defendant.[17] Defendant signed the form, acknowledging his rights, waiving his rights, and agreeing to speak with Agent Gentine.[18] The Court admitted the document bearing Defendant's waiver at the jury trial as Government Exhibit 3.[19]

During the interview, Agent Gentine asked Defendant if he had been involved with the bank robbery in question.[20] Defendant told Agent Gentine that he was involved.[21] He explained that while at the Grossman Center, he began receiving threats to himself and family members from other residents, in regards to his prior cooperation with law enforcement in another case

---

[14]*Id*. at 111.

[15]*Id*. at 112; Gov't Ex. 3.

[16]Trial Tr. at 112.

[17]*Id*. at 113, 115–16; Gov't Ex. 3.

[18]*Id*. at 113; Gov't Ex. 3.

[19]Trial Tr. at 113–15.

[20]*Id*. at 116.

[21]*Id*.

3

involving a bank robbery with Randall Thomas.[22] Defendant stated a resident named "Solo" blackmailed him into assisting him with the Kaw Valley Bank robbery, and threatened to harm Defendant's wife if he did not help him commit the bank robbery.[23]

Defendant told Agent Gentine that he arranged to leave the Grossman Center to go job-seeking on October 19, 2010.[24] He went to Kansas City, where "Solo" picked him up at the intersection of Tenth and Main Street.[25] They drove to Topeka, where they scouted potential banks to rob.[26] When they decided on Kaw Valley Bank, they pulled into the parking lot and put on masks provided by Solo.[27] Defendant reported that after they entered the bank, he stayed at the door while Solo approached the tellers and took the money.[28] He stated that soon after the robbery, they drove back to Leavenworth and split the proceeds; Solo gave Defendant $4000.[29] During the interview, Defendant viewed a photo taken from a video surveillance of the robbery and identified himself in the picture as the man wearing the white ball cap, and the other individual in the photo as Solo.[30]

Agent Gentine testified that Defendant had committed bank robberies of Topeka banks

---

[22] *Id*. at 127, 137.

[23] *Id*. at 117.

[24] *Id*.

[25] *Id*.

[26] *Id*. at 117–18.

[27] *Id*. at 118.

[28] *Id*.

[29] *Id*.

[30] *Id*. at 123–24.

4

on three prior occasions: 1) he helped Randall Thomas rob the Kaw Valley State Bank on November 13, 2006; 2) he robbed another Kaw Valley State Bank on November 24, 2006; and 3) he robbed the Capital City Bank on November 28, 2006.[31]

Defendant testified in his defense. Specifically, he testified that during his stay at the Grossman Center, he received threats from other residents because he had cooperated with law enforcement in the past; that other residents, including Solo, threatened to kill him if he did not commit this bank robbery to obtain money to buy drugs for the other residents in the Grossman Center; that on October 18, 2010, Solo picked him up at Tenth and Main in Kansas City; that Defendant suggested they rob the Kaw Valley Bank in Topeka; that they robbed the bank at 2:11 p.m., he got his $4000, then he returned to the Grossman Center and hid his money in his shoe; and that he walked away from the Grossman Center on October 26.[32]

Defendant was convicted by a jury of one count of bank robbery by force, violence or intimidation in violation of 18 U.S.C. §§ 2 and 2113(a).[33] Defense counsel filed a motion for judgment as a matter of law and a motion for judgment of acquittal; Defendant also filed a *pro se* motion for new trial on the basis of newly discovered evidence.[34] On May 29, 2012, this Court denied the post-trial motions and sentenced Defendant to a term of 210 months' custody.[35] With respect to Defendant's motion for new trial, the Court found that there was no newly discovered

---

[31] *Id*. at 137–39.

[32] *Id*. at 176–210.

[33] Doc. 59.

[34] Docs. 61, 62, 68.

[35] Doc. 75.

evidence that would justify a new trial.³⁶ Defendant filed a direct appeal of his sentence to the United States Court of Appeals for the Tenth Circuit, which affirmed.³⁷ The United States Supreme Court subsequently denied Defendant's petition for writ of certiorari.³⁸ Defendant filed a § 2255 Motion on June 3, 2013, arguing, *inter alia*, that counsel ineffectively failed to file a motion for new trial; the Court denied the motion in an Order of May 27, 2014.³⁹ Defendant subsequently filed the pending Motion for New trial.

## II. Discussion

Fed. R. Crim. P. 33(a) states that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." A Rule 33 motion may be based on "newly discovered evidence."⁴⁰ "A motion for new trial based on newly discovered evidence is not favorably regarded and should be granted only with great caution."⁴¹ To prevail, a defendant must prove:

> (1) the evidence was discovered after trial; (2) the failure to learn of the evidence was not caused by his own lack of diligence; (3) the new evidence is not merely impeaching; (4) the new evidence is material to the principal issues involved; and (5) the new evidence is of such a nature that in a new trial it would probably produce an acquittal.⁴²

---

³⁶Doc. 89, Sent. Hr'g Tr. at 6–8.

³⁷*United States v. Beadles*, 508 F. App'x 807 (10th Cir. 2013).

³⁸Doc. 95.

³⁹Docs. 96, 97.

⁴⁰Fed. R. Crim. P. 33(b)(1). A motion grounded on newly discovered evidence must be filed within three years after the verdict. *Id.* Defendant's motion was filed on June 6, 2014, within three years of the October 5, 2011 guilty verdict.

⁴¹*United States v. McCullough*, 457 F.3d 1150, 1167 (10th Cir. 2006) (quotations omitted).

⁴²*Id.*

6

The decision whether to grant a motion for new trial is committed to the sound discretion of the trial court.[43]

Defendant does not offer this Court any new basis upon which it may grant his motion. Instead, Defendant offers the following speculative and conclusory arguments, which were or could have been raised in his earlier Rule 33 motion, that he claims to have learned from counsel on January 13, 2012: Agent Gentine committed acts of material perjury, Agent Gentine relied upon false indicia to support Defendant's arrest warrant, the Government did not have possession of a viable recording or phone records that Agent Gentine claimed to receive in his supporting affidavit and Assistant United States Attorney Hendershot knew or should have known that Agent Gentine offered perjured testimony regarding the anonymous tip that caused Agent Gentine to interview him. Defendant further argues that he would not have been convicted but for the perjured testimony of Agent Gentine. This claim fails, however, because at best, it is merely impeaching, and Defendant does not articulate specific and particularized factual allegations, which, if proven, would produce an acquittal.

The record shows that Defendant confessed to the robbery after Agent Gentine read his *Miranda* rights and Defendant identified himself as a robber in one of the surveillance videos. Although Defendant once again claims that the confession was coerced, he offers no facts to support his claim. While Defendant contends that his confession to Agent Gentine was "involuntary," he does not explain why it was involuntary. Even if the confession was coerced, this certainly would not be newly discovered information that he could not have learned due to

---

[43] *United States v. Custodio*, 141 F.3d 965, 966 (10th Cir. 1998).

no fault of his own diligence. Indeed, the Court rejected Defendant's claim in his § 2255 motion that counsel was ineffective for failing to file a motion to suppress his confession as involuntary, explaining that in addition to having been *Mirandized*, Defendant took the stand in his defense at trial and gave the same testimony he made in his confession to Agent Gentine.[44] Accordingly, Defendant is not entitled to a new trial on these grounds.[45]

Defendant also appears to renew his Fourth Amendment claims, which the Court denied in its Order denying his § 2255 motion.[46] To the extent that Defendant is moving to alter or amend that judgment, a motion to alter or amend judgment pursuant to Rule 59(e) may be granted only if the moving party can establish: (1) an intervening change in the controlling law; (2) the availability of new evidence that could not have been obtained previously through the exercise of due diligence; or (3) the need to correct clear error or prevent manifest injustice.[47] Such a motion does not permit a losing party to rehash arguments previously addressed or to present new legal theories or facts that could have been raised earlier.[48] Although Defendant claims that Agent Gentine's allegedly perjured testimony is new evidence, this argument must fail for the reasons stated above. Defendant merely rehashes previous arguments but makes no attempt to establish factual support for any of the three prongs under which a Rule 59 motion

---

[44] *See* Doc. 106, Memorandum and Order at 12–13.

[45] *See id.* at 14–15 (denying Defendant's § 2255 claim that counsel was ineffective for failure to file Rule 33(a) motion for new trial).

[46] *Id.* at 15–16.

[47] *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000); *Brumark Corp. v. Samson Res. Corp.*, 57 F.3d 941, 948 (10th Cir. 1995).

[48] *Servants*, 204 F.3d at 1012; *Brown v. Presb. Healthcare Servs.*, 101 F.3d 1324, 1332 (10th Cir. 1996), *cert. denied*, 520 U.S. 1181 (1997).

should be granted. Accordingly, the Court declines to alter or amend judgment as to Defendant's Fourth Amendment claims under rule 59(e).

Finally, Defendant requests a *Franks* hearing on the same grounds that he requested a new trial.[49] In *Franks*, the Supreme Court held that a search warrant based on an affidavit that includes knowing and intentional false statements, or statements made with reckless disregard of the truth, may void the warrant.[50] Upon a showing of falsity by a preponderance of the evidence, the reviewing court is to set aside the false material, and hold a hearing to determine whether the remaining information supports probable cause to believe evidence of a crime would be found at the place to be searched.[51] Defendant has the burden of showing what portions of the warrant affidavit are false and providing a statement of supporting reasons.[52] Defendant argues that the Court should set aside the affidavit to support Gentine's warrant vis-a-vis a *Franks* hearing because the Government failed to obtain a recording or phone records of the anonymous tip. Any need for a *Franks* hearing, however, is precluded by the Court's denial of Defendant's motion for new trial. Accordingly, Defendant's request is denied.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant's Motion for New Trial Based on Newly Discovered Evidence of Perjury Pursuant to Fed. R. Crim. P. 33(a)(b)(1) (Doc. 107) is **denied**; Defendant's Motion to Proceed *In Forma Pauperis* is **granted** (Doc. 108).

**IT IS SO ORDERED.**

---

[49]*Franks v. Delaware*, 438 U.S. 154 (1978).

[50]*Id.* at 155–56.

[51]*Id.*

[52]*United States v. Cooper*, 654 F.3d 1104, 1129 (10th Cir. 2011) (citing *Franks*, 438 U.S. at 171).

Dated: April 15, 2016

      S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE